IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIM. NO. JKB-17-367 |
| TYNISHA MARTIN KADIRI, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Now pending before the Court is Tynisha Martin Kadiri's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 110). The motion is fully briefed and no hearing is required. *See* 28 U.S.C. § 2255(b); Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the Court will deny Ms. Kadiri's motion.

### I.  *Background*

On July 11, 2017, Ms. Kadiri was indicted on 18 counts of Aiding or Assisting in the Filing of False Tax Returns in violation of 26 U.S.C. § 7206(2) ("False Tax Returns"), and three counts of Willful Failure to File Returns in violation of 26 U.S.C. § 7203 ("Failure to File"). (ECF Nos. 1, 2.) On August 9, 2017, Gerald Ruter, Esq., was appointed to represent Ms. Kadiri pursuant to the Criminal Justice Act. (ECF No. 16.) Ms. Kadiri pleaded not guilty on all counts on October 31, 2017. (ECF No. 26.) Trial commenced in April of 2018, and on April 16, the jury found Ms. Kadiri guilty of two counts of Aiding or Assisting in the Filing of False Tax Returns (Counts 16 and 17) and two counts of Willful Failure to File Returns (Counts 20 and 21). (ECF No. 46.) She was found not guilty of the other counts.

1

Following Ms. Kadiri's conviction, the United States Probation Office submitted a presentence investigation report (ECF No. 58), and both parties submitted sentencing memoranda (ECF Nos. 71, 73). The Probation Office and the parties agreed that Ms. Kadiri's criminal history placed her in category I and that for the purpose of determining the applicable sentencing guidelines, the False Tax Returns counts and Failure to File counts should be separately grouped pursuant to U.S.S.G. § 3D1.2. (*See id.*) They also agreed that a two-level U.S.S.G. § 2T1.4(b)(1) enhancement should be applied to the False Tax Returns Group, and that a two-level U.S.S.G. § 2T1.1(b)(1) enhancement should be applied to the Failure to File Group. (*Id.*) However, the parties disagreed regarding the correct calculation of the loss amounts associated with Ms. Kadiri's crimes and the corresponding base offense levels for each Group of counts. In part as a result of this disagreement, Ms. Kadiri argued for a guidelines range of 12 to 18 months and requested that the Court impose a variant "split sentence" (ECF No. 71), while the Government advocated a guidelines range of 46 to 57 months and requested a sentence of 54 months (ECF No. 73).

The Court held a sentencing hearing on August 13, 2018. At the hearing, the Court adopted Ms. Kadiri's loss amount calculation for the False Tax Returns Group and the Government's calculation for the Failure to File Group. (*See* Sentencing Hrg. Tr. at 13:6–13:16, 25:16–25:25, ECF No. 98.) After applying the agreed-upon enhancements, these loss amount findings resulted in an offense level of 12 for the False Tax Returns Group and 16 for the Failure to File Group, with a corresponding combined offense level of 18 and guidelines range of 27 to 33 months under U.S.S.G. § 3D1.4. (*Id.* at 20:3–21:3.) However, the Court also *sua sponte* determined that an additional two-level upward adjustment for abuse of a position of private trust should be applied to the False Tax Returns Group of counts pursuant to U.S.S.G. § 3B1.3. (*Id*. at 21:11–23:1, 26:1–26:20.) No party objected. The application of the § 3B1.3 enhancement raised the offense level

associated with the False Tax Returns Group from 12 to 14. (*Id.*) But critically, the application of the enhancement did not actually affect the final combined offense level computation or sentencing guidelines range, which remained level 18 and 27 to 33 months respectively.[1] (*Id.*)

After calculating this guidelines range of 27 to 33 months, the Court determined that the sentencing guidelines significantly understated Ms. Kadiri's culpability given the unique facts of her case. The Court explained its view that by tightly focusing on the issue of monetary loss, the guidelines effectively ignored "the extent of the dishonesty," which the Court determined to be an important sentencing consideration. (*Id*. at 58:6.) The Court found that Ms. Kadiri's engagement in "bald-faced lying" rather than "a relatively slightly dishonest act[,]" significantly enhanced her culpability and required the imposition of an above-guidelines sentence. (*Id.* at 58:7–58:8.) After a thorough discussion of its reasoning, the Court concluded that a total sentence of 48 months was sufficient but not greater than necessary to comply with the purposes set out in 18 U.S.C. § 3553. (*Id.* at 59:25–60:9.) The Court also imposed a one-year period of supervised release and restitution of $90,895. (Judgment, ECF No. 79.)

Ms. Kadiri appealed to the Fourth Circuit, arguing that the Court erred in applying the abuse of a position of private trust enhancement. Applying the plain-error standard, the Fourth Circuit affirmed the Court's judgment. (ECF No. 107.) The Fourth Circuit noted that the application of the § 3B1.3 enhancement "ultimately had no impact" on the guidelines range. (*Id.* at 2.) The Fourth Circuit also stated that it could "discern no error" in the Court's finding that Ms. Kadiri's "gross abuse of trust" justified the upward-variant sentence. (*Id.* at 2–3.)

---

[1] U.S.S.G. § 3D1.4 establishes that a "combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level" by an amount corresponding to the offense level of the Group with the lower offense level. U.S.S.G. § 3D1.4 calls for a two-level increase if the Group with the lower offense level is between one and four levels below the Group with the higher offense level. Thus, because level 12 and level 14 are both between one and four levels lower than level 16, the combined offense level computation remains 18 whether the False Tax Returns Group is categorized as a level 12 or level 14 offense.

3

Subsequently, Mr. Ruter withdrew, and Ms. Kadiri filed the pending motion to vacate on the basis that she was denied the effective assistance of counsel and thereby deprived of her Sixth Amendment rights. (Mot. Vacate, ECF No. 110.) Ms. Kadiri's submission lays out three sets of errors allegedly justifying relief: (1) Mr. Ruter's failure to object to the Court's application of the § 3B1.3 enhancement; (2) Mr. Ruter's failure to secure her a favorable plea deal; and (3) a collection of various other alleged errors on Mr. Ruter's part that Ms. Kadiri claims cumulative constituted ineffective assistance.[2] Ms. Kadiri also requested discovery in relation to her claims. (*Id.*) The Government has filed an opposition (ECF No. 117), and Ms. Kadiri a reply (ECF No. 122).

## II.     Legal Standards

28 U.S.C. § 2255 allows a federal prisoner to move to set aside a sentence on the ground "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The movant in a 28 U.S.C. § 2255 proceeding bears the burden of proving her entitlement to relief by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). Though a court must hold a hearing when the movant raises a genuine dispute of fact, the Court need not do so where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also*, *United States v. Nardone*, 948 F.2d 1283 (4th Cir. 1991) (Table) ("The decision concerning whether to hold such a hearing is committed to the

---

[2] In the AO-243 Model Form accompanying her motion, Ms. Kadiri's also included a fourth, catchall claim that: "Ms. Kadiri's Conviction And Sentence Are Violative Of The First, Fourth, Fifth, Sixth, And Eighth Amendments To The Constitution." (Mot. Vacate at 6.) However, Ms. Kadiri did not otherwise mention or expand upon this claim in her motion papers, and the conclusory allegation is patently without merit.

sound discretion of the district court.") (citing *Raines v. United States*, 423 F.2d 526, 530 (4th Cir. 1970)).

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel. Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), to establish that she was deprived of this right, a defendant must satisfy a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence v. Branker*, 517 F.3d 700, 708 (4th Cir. 2008) (quoting *Strickland*, 446 U.S. at 689). Accordingly, "the standard for judging counsel's representation is a most deferential one." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). And even if counsel committed unreasonable errors, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citing *Strickland*, 446 U.S. at 687).

### III. *Analysis*

It is clear from the record that none of Mr. Ruter's alleged errors rise to the level of ineffective assistance. No hearing or discovery is required to ascertain that Ms. Kadiri cannot meet her burden of proving a deprivation of her Sixth Amendment rights under *Strickland's* exacting standard.

### A. Failure to Object to U.S.S.G. § 3B1.3 Enhancement

Ms. Kadiri has failed to make out a claim for ineffective assistance in relation to the U.S.S.G. § 3B1.3 enhancement. Ms. Kadiri argues that Mr. Ruter's failure to object to the application of this enhancement was objectively unreasonable. (Mot. Vacate ¶¶ 1–26.) She contends that this failure prejudiced her by leading the Fourth Circuit to review the Court's application of the § 3B1.3 enhancement under the relatively permissive "plain error" standard, rather than the "harmless error" standard. (*Id.* ¶ 25.) Her briefing implies that had Mr. Ruter objected, the Court would not have imposed the upward variant sentence, or the Fourth Circuit would not have upheld the sentence. (*Id.*; Mot. Vacate Mem. Supp. at 20–24, ECF No. 110-1.)

Even granting Ms. Kadiri's premise that the application of the § 3B1.3 enhancement was a technical error to which Mr. Ruter should have objected, Ms. Kadiri cannot plausibly claim that she suffered any prejudice. As noted, the Court's application of the U.S.S.G. § 3B1.3 enhancement had no effect whatsoever on the guidelines range applicable to Ms. Kadiri; with or without the § 3B1.3 enhancement, the range remained 27 to 33 months. Likewise, the Court's decision to vary upward from the guidelines range had no relation at all to its finding regarding the § 3B1.3 enhancement. As the Court explained at length during the sentencing hearing, the Court imposed the variant sentence precisely because the Court found the guidelines failed to effectively capture the seriousness of Ms. Kadiri's misconduct. The notion that the technical legal matter of the applicability of the § 3B1.3 enhancement played any role in the Court's decision is flatly inaccurate. Additionally, the Fourth Circuit has already evaluated the Court's decision to vary upward and found that there was no error. (ECF No. 107.) The application of the § 3B1.3 enhancement is, therefore, an academic issue, and Mr. Ruter's failure to preserve an objection on that particular point had no prejudicial impact.

### B. *Failure to Obtain Desirable Plea Deal*

Ms. Kadiri has not provided evidence supporting a finding that Mr. Ruter committed ineffective assistance by failing to negotiate a plea deal that she found desirable. To the contrary, "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief" on this ground. 28 U.S.C. § 2255(b).

In her motion, Ms. Kadiri argued that Mr. Ruter provided ineffective assistance because he failed to negotiate a desirable plea agreement. (Mot. Vacate ¶¶ 27–35.) Ms. Kadiri supported this claim with general assertions, pled on information and belief, that Mr. Ruter failed to investigate favorable plea opportunities or negotiate an acceptable agreement. (*Id.*) Notably, she did not allege that a plea offer was ever made to Mr. Ruter or that she ever directed Mr. Ruter to pursue a plea bargain.

Mr. Ruter submitted a responsive affidavit with the Government's opposition. (Ruter Aff., ECF No. 117-1.) Mr. Ruter testified that "Ms. Kadiri was consistently opposed to pleading guilty, was never interested in a plea agreement, and expressed her belief that she would not be found guilty of the felony [False Tax Returns] counts against her." (*Id.* ¶ 3.) He also testified that he nonetheless engaged in negotiations with the Government, including during an in-person meeting that Mr. Ruter and Ms. Kadiri attended with the prosecuting attorney. (*Id.* ¶¶ 3–4.)

Ms. Kadiri then submitted a counter affidavit, in which she contested Mr. Ruter's assertion that she had been categorically opposed to pleading guilty. (Kadiri Aff., ECF No. 122-1.) However, she admitted that she "discussed with Ruter that I was not guilty[,]" and that she attended a "reverse proffer" with Mr. Ruter and the prosecuting attorney. (*Id.* at 1–3.) She also specifically noted that the Government never offered her a plea deal. (*Id.*)

7

The Sixth Amendment right to counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012).  Of course, "a defendant has no right to be offered a plea." *Missouri v. Frye*, 566 U.S. 134, 148 (2012).  However, ineffective assistance can occur if the prosecution makes a plea offer and counsel fails to communicate that offer to the defendant.  *See id*.  Likewise, ineffective assistance can occur if counsel provides objectively unreasonable advice that leads a defendant to reject a plea offer that she would otherwise have accepted if she had benefited from reasonable advice.  *See Lafler*, 566 U.S. 156.  That said, a defendant cannot prove ineffective assistance merely by demonstrating that counsel failed to secure a desirable plea agreement.  The defendant must show both that counsel's conduct during the plea-bargaining process was objectively unreasonable, and that but for counsel's failures, the prosecution would have offered and the defendant would have accepted a plea bargain that would have resulted in a more favorable sentence.  *See Ramirez v. United States*, 751 F.3d 604 (8th Cir. 2014) (upholding denial of ineffective assistance claim because prosecution never actually made a firm plea offer); *Merzbacher v. Shearin*, 706 F.3d 356 (4th Cir. 2013) (upholding denial of ineffective assistance claim because evidence indicated defendant would not have accepted plea offer).

Here, Ms. Kadiri cannot show that Mr. Ruter's conduct was objectively unreasonable or demonstrate that she suffered any prejudice.  To start, there is no evidence that the prosecution ever made Ms. Kadiri an offer that Mr. Ruter failed to convey.  Likewise, Ms. Kadiri has provided no evidence that the Government was amendable to offering her a plea more favorable than her eventual sentence.  Nor is there any evidence that Mr. Ruter ignored Ms. Kadiri's directions to explore a plea deal, or otherwise provided unreasonably deficient representation in the plea negotiation process.  Instead, the record reveals that Mr. Ruter followed Ms. Kadiri's instructions by focusing on trial, while still taking steps to ensure that she had the opportunity to meet with the

prosecuting attorney and explore plea opportunities. Ms. Kadiri has provided no basis upon which to find that Mr. Ruter's conduct did not fall "within the wide range of reasonable professional assistance." *Strickland*, 446 U.S. at 689.

Additionally, even if some fault could be found with Mr. Ruter, the record flatly contradicts the notion that Ms. Kadiri would have accepted any plea offer that would have required her to plead guilty to a False Tax Returns count. Ms. Kadiri has strenuously maintained her innocence throughout this matter and has consistently refused to acknowledge any wrongdoing in relation to the False Tax Returns charges. Indeed, at the sentencing hearing, Ms. Kadiri expressly explained to the Court: "when I was indicted, I went to different law offices and I presented what I had at the time, and I was instructed that I needed to take a plea because I was already guilty. And I knew that I did not [commit those crimes.] . . . To say that I intentionally defrauded the federal government on two proven occasions is not how I stand before you today." (Sentencing Hrg. Tr. at 52:14–53:1.) What is more, even in her motion to vacate, Ms. Kadiri has continued to protest her innocence, claiming that a key prosecution witness "LIED ON THE STAND." (Kadiri Aff. at 2) (emphasis in original). Ms. Kadiri's consistent refusal to admit culpability belies her claim that she would have accepted a plausible plea offer. In sum, the record reflects that Mr. Ruter's conduct was reasonable and that Ms. Kadiri suffered no prejudice.

### C.  *Cumulative Errors*

Ms. Kadiri has also failed to provide evidence showing other errors on Mr. Ruter's part cumulatively establishing ineffective assistance. Ms. Kadiri alleges that Mr. Ruter made a number of mistakes that collectively amounted to a deprivation of her Sixth Amendment right to counsel. (Mot. Vacate ¶¶ 36–45.) As a legal matter, a collection of errors that do not individually rise to the level of ineffective assistance can cumulatively result in a deprivation of a defendant's right to

counsel. *See United States v. Russell*, 34 F. App'x 927 (4th Cir. 2002). However, Ms. Kadiri has failed to actually provide evidence sufficient to establish a cumulative deprivation. Indeed, many of her claims appear to be boilerplate allegations with no connection to this case. The Court will address each below:

### 1. Failure to Move to Dismiss Indictment

Ms. Kadiri alleges: "Counsel unprofessionally failed to timely, properly, and effectively move for dismissal of the indictment on the grounds that it was not presented or returned by the grand jury in open court." (Mot. Vacate ¶ 37.) Ms. Kadiri provides no evidence at all in support of this allegation and the record belies her claim of procedural improprieties with the indictment. (*See* ECF Nos. 1, 2.) The argument is without merit.

### 2. Failure to Advise Regarding Relevant Facts and Law

Ms. Kadiri alleges:

> Counsel unprofessionally failed to advise Ms. Kadiri as to all facts and law relevant to her decision to plead not guilty and proceed to trial. Had Ms. Kadiri been fully advised, and had counsel competently pursued a favorable plea agreement, there is a reasonable probability that she would have pleaded guilty with a favorable plea agreement. But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.

(Mot. Vacate ¶ 38.) As explained above, Ms. Kadiri has failed to provide evidence that counsel's conduct during the plea-bargaining process was objectively unreasonable, or that she suffered prejudice. She has also failed to specify what alleged facts or law counsel failed to inform her regarding, or to make a *prima facie* case that she would have taken a plea if she had received different advice. This claim also lacks merit.

### 3. Failure to Investigate and Present Case

Ms. Kadiri alleges: "Counsel unprofessionally failed to investigate or present available, material, exculpatory evidence and testimony at trial and failed to timely object to the unlawful

10

admission of evidence by the prosecution." (Mot. Vacate ¶ 39.) In her motion, Ms. Kadiri provided no evidence in support of this claim. After Mr. Ruter submitted his affidavit describing his preparations and efforts at trial though, Ms. Kadiri did submit an affidavit providing some examples of aspects of Mr. Ruter's trial preparations and trial strategy with which she took issue. (*See* Kadiri Aff.)

Some of Ms. Kadiri's criticisms appear to be directly contradicted by the record. For example, her claim that Mr. Ruter "was not aware of my academic achievements" (Kadiri Aff. at 2), conflicts with the fact that Mr. Ruter's direct examination of Ms. Kadiri began with a series of questions eliciting testimony on precisely this subject. (*See* 4/12/20 Trial Tr. at 26:9–30:22, ECF No. 101.) Other criticisms appear to reflect reasonable tactical disagreements or frustrations regarding relatively minor aspects of Mr. Ruter's preparations. None of the issues Ms. Kadiri identifies rise to the level of objectively unreasonable representation endangering Ms. Kadiri's right to a fair trial under *Strickland*.

The reality is that Mr. Ruter's efforts resulted in the jury returning not guilty verdicts on 16 of the 18 felony counts, and that the evidence against Ms. Kadiri on the two guilty counts was very compelling. The record clearly reflects that, though it may have been imperfect, Mr. Ruter's representation at trial was objectively reasonable. Ms. Kadiri has not presented countervailing evidence that could overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," or establish a likelihood that different decisions on Mr. Ruter's part would have resulted in a substantially different trial outcome. *Strickland*, 446 U.S. at 689.

### *4. Failure in Regard to Jury Instructions and Objections*

Ms. Kadiri alleges: "Counsel unprofessionally failed to timely request appropriate jury instructions and to timely object to insufficient instructions. In final argument, counsel unprofessionally also failed to timely object to improper argument by the prosecution and/or to timely ask for curative instructions for the improper argument." (Mot. Vacate ¶ 40.) Ms. Kadiri does not flesh out this boilerplate allegation by identifying any jury instructions Mr. Ruter failed to seek, or any instances in which he failed to make a proper objection. This claim is without merit.

### *5. Failure to Represent at Sentencing*

Ms. Kadiri alleges:

> Counsel unprofessionally failed to investigate or present available evidence and legal authority material to the sentencing of Ms. Kadiri. Counsel also unprofessionally failed to object to[] unlawful, false and unreliable evidence used to determine Ms. Kadiri's guideline sentencing range and ultimate sentence. . . . Ms. Kadiri was prejudiced by the objectively unreasonable performance of counsel during the sentencing process, when counsel unprofessionally failed to move for appropriate downward departure or a downward variance under 18 U.S.C. § 3553(a) in Ms. Kadiri's case.

(Mot. Vacate ¶¶ 41–42.)

Ms. Kadiri's description of events is inaccurate. Mr. Ruter filed a sentencing memorandum in which he challenged in detail the factual and legal foundation for the Government's proposed computation of the tax losses associated with the Failure to File counts and the corresponding guidelines range. (EFC No. 71.) Indeed, at the sentencing hearing, the Court rejected the Government's theory regarding the proper method of calculation in favor of defense counsel's position. (Sentencing Hrg. Tr. at 13:6–13:16.)[3] Likewise, Mr. Ruter advocated for a variant one-

---

[3] Though it is true that Mr. Ruter was unable to effectively contest the government's calculation of the tax loss associated with the Failure to File Counts as $79,522, this was a result of Ms. Kadiri's bookkeeping practices—i.e., her failure to file her taxes and decision to pay her employees in cash without any apparent record—which prevented

year "split sentence," both in the sentencing memorandum (ECF No. 71), and at the sentencing hearing (Sentencing Hrg. Tr. at 51:9–51:22). Mr. Ruter's representation was not unreasonably deficient or prejudicial.

### 6. *Failure to Represent on Appeal*

Ms. Kadiri alleges: "Counsel unprofessionally failed to investigate or present the strongest issues available to Ms. Kadiri for her direct appeal and failed to preserve viable issues for review under Fed. R. Crim. P. 52(a)." (Mot. Vacate ¶ 43.) Ms. Kadiri does not identify the appellate argument she believes Mr. Ruter should have raised, or otherwise provide any evidence in support of this allegation. This boilerplate claim is again without merit.

### 7. *Conflict of Interest*

Ms. Kadiri alleges: "counsel labored under an actual conflict of interest which adversely affected his / their performance during the pretrial, plea, trial, sentencing and direct appeal process in this case." (Mot. Vacate ¶ 44.) Ms. Kadiri provides no evidence in support of this conclusory allegation, which again appears to lack any basis in reality.

In sum, Ms. Kadiri has failed to establish ineffective assistance on the basis of the cumulative impact of multiple deficiencies. Few of her allegations bear any connection to reality, and even where she has stated a genuine criticism of Mr. Ruter's representation, she has failed to make the necessary showing of unreasonableness and prejudice required under *Strickland*. The motion to vacate will be denied.

---

Ms. Kadiri from proving her entitlement to additional deductions and exemptions not factored in by the Government. (*See* Sentencing Tr. at 24:3–25:21.) Further, Ms. Kadiri cannot plausibly claim any substantial prejudice related to Mr. Ruter's inability to effectively contest this point, since the offense level associated with the Failure to File counts would remain level 16 for any tax loss amount between $40,000 and $100,000, and it is implausible that any additional deduction could have brought the amount of loss below $40,000. *See* U.S.S.G. §§ 2T1.1, 2T4.1.

### D.  *Motion for Discovery*

Finally, the Court will also deny Ms. Kadiri's request for discovery.  Movants under § 2255 are "not entitled to discovery as a matter of ordinary course" and must show good cause by making a prima facie case for relief before the Court will order discovery.  *Ramey v. United States*, Crim. No. RWT-12-309, 2014 WL 12661574, at *1 (D. Md. Feb. 14, 2014) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)).  Ms. Kadiri has not met this requirement, and the record already before the Court conclusively demonstrates that she is not entitled to any relief.

### IV.  Conclusion

For the foregoing reasons, an order shall enter denying Ms. Kadiri's motion in its entirety.  Because Ms. Kadiri has not "made a substantial showing of the denial of a constitutional right," the Court will not issue a certificate of appealability.  28 U.S.C. § 2253(c)(2).

DATED this 29th day of June, 2020.

BY THE COURT:

_____/s/_____

James K. Bredar
Chief Judge